# United States Court of Appeals
## For the First Circuit

No. 25-1023

5-STAR GENERAL STORE, a/k/a Bento LLC; MARC ALLEN, INC.; FAST FORWARD MEDIA, INC.; KENNEDY'S IRISH PUB INC.; CARDEN, INC.; FRENCH FLORIST, LLC; LUXE FURNITURE, INC.; LUNA'S HOSPITALITY GROUP, LLC; THE GENT’S PLACE MEN'S FINE GROOMING LLC, on behalf of themselves and others similarly situated; MEZE LLC,

Plaintiffs, Appellees,

v.

AMERICAN EXPRESS COMPANY; AMERICAN EXPRESS TRAVEL RELATED SERVICES COMPANY, INC.,

Defendants, Appellants.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

[Hon. Mary S. McElroy, U.S. District Judge]

Before

Gelpí, Thompson, and Montecalvo,
Circuit Judges.

Peter T. Barbur, with whom Kevin J. Orsini, Helam Gebremariam, David H. Korn, Rebecca J. Schindel, and Cravath, Swaine & Moore LLP were on brief, for appellants.

Thomas Scott-Railton, with whom Scott C. Harris, Peggy Wedgworth, Milberg Coleman Bryson, Phillips Grossman PLLC, Deepak Gupta, Matthew W.H. Wessler, Gupta Wessler LLP, Tracey Kitzman, Song PC, Antony R. Leone, II, John Joseph O'Brien, and Leone Law, LLC, were on brief, for appellees.

Brendan Benedict and Benedict Law Group PLLC on brief as amici

curiae supporting appellees.

August 19, 2026

**MONTECALVO**, **Circuit Judge**. Defendants-Appellants American Express Company and American Express Travel Related Services Company, Inc. ("Amex") appeal the district court's order denying their motion to stay litigation and compel arbitration. Plaintiffs-Appellees include the named plaintiff, a small store located in Pawtucket, Rhode Island, 5-Star General Store & Deli, and thousands of other small merchants based throughout the United States who we will refer to collectively as "5-Star." 5-Star filed demands for arbitration against Amex in the American Arbitration Association tribunal ("AAA," colloquially referred to as triple A), the largest arbitration association in the United States and one of the associations named in Amex's arbitration agreement with 5-Star. After the district court denied Amex's motion, Amex timely appealed. This dispute centers on whether the district court exceeded its authority when it held that Amex defaulted under the Federal Arbitration Act ("FAA"), 9 U.S.C. § 3, and waived its right to compel arbitration. As we will explain, we find that the district court neither exceeded its authority nor erred in finding that 5-Star waived its right to compel arbitration.

## I. Background

In August 2023, 5-Star demanded arbitrations in AAA against Amex under an existing arbitration agreement.[1] That month, 5-Star filed demands for arbitration challenging Amex's "swipe-fee" policies. A swipe fee is a charge levied on merchants every time a customer uses a credit card to pay them. 5-Star claims these swipe fees, which are around three percent or more of each credit card sale, pose a substantial expense to small merchants. 5-Star's arbitrations challenge certain "non-discrimination provisions" within Amex's swipe-fee policies that prohibit 5-Star from "incentiviz[ing] shoppers to use cheaper payment cards." These provisions, 5-Star alleged, have forced almost all credit-card-accepting merchants to accept Amex, despite their burdensome fees.

Before AAA, the parties disagreed about the filing fees that Amex owed to the tribunal in 5,155 of the demanded arbitrations, which involve damages and injunctive relief claims. No arbitrator was appointed in those cases because arbitrators are appointed after filing fees are paid, and because the parties did not follow AAA's suggestion to appoint an arbitrator to oversee the fee dispute. For that reason, an administrator of AAA oversaw

[1] The parties do not dispute the terms of the arbitration agreement. Merchants must agree to Amex's arbitration agreement in order to accept payment by Amex credit card.

this dispute. The AAA administrator informed the parties that under the AAA Commercial Arbitration Rules' Administrative Fee Schedule, damages claims that request injunctive relief and are not contested have fees of $3,500 per case.[2] After numerous written exchanges between the parties and the AAA administrator regarding the fee disagreement -- which took place over several months -- the AAA administrator issued a determination stating the fees owed by the parties. The administrator determined that a filing fee of $3,500 applied to the at-issue arbitrations, with 5-Star responsible for $350 of that total and Amex responsible for the remaining $3,150.

5-Star paid its share of the $3,500 filing fee, but Amex refused to pay. Amex continued to dispute the $3,500 fee charged, asserting that it contested those claims and, therefore, a lower fee should apply to each case instead.[3] During these exchanges, the AAA administrator repeatedly warned that if the fees were not paid by the due date -- February 26, 2024 -- "the cases [would] be administratively closed." On February 29, 2024, pursuant to the warnings, the AAA administrator informed the parties that the

[2] The administrator also informed the parties that the initial filing fees would be smaller for damages claims where additional injunctive relief was contested by Amex.

[3] Amex asserted that a lower fee applied because they contested those injunctive relief claims, and the administrator had previously informed the parties that cases with contested injunctive relief claims are subject to a lower filing fee.

claims were "administratively closed for non-payment." The AAA administrator then held a videoconference with counsel in March 2024, stating that the closure of the cases "was final" and that the cases were "not subject to reopening."

In March 2024, 5-Star filed a class action complaint in the District Court for the District of Rhode Island. On behalf of a class of merchants involved in the arbitrations, 5-Star alleged that Amex waived its right to compel arbitration in those suits. 5-Star claimed that Amex's refusal to pay filing fees in the arbitrations before AAA caused those arbitration proceedings to close and constituted a default under the FAA, 9 U.S.C. § 3, and a waiver under common law. Amex responded by filing a motion to stay the district court proceedings under the FAA, 9 U.S.C. § 3, and to compel arbitration under § 4 in order to place the parties back before AAA. 5-Star opposed Amex's motion. The district court denied Amex's motion, explaining that the court first had to determine whether Amex defaulted under § 3 and holding that Amex did in fact default. The district court also held that, to the extent a separate waiver analysis was required, Amex waived its right to compel arbitration.[4] Amex timely appealed.

[4] Amex also moved to strike the class allegations in 5-Star's complaint, but it does not appeal the district court's denial of its motion to strike. Therefore, we do not discuss the class allegations further.

## II. Discussion

### A.

Amex requests that the district court stay litigation here in order to return 5-Star's claims to the AAA tribunal and restart proceedings there. To achieve that end, Amex must show 1) that the district court exceeded its authority in deciding whether Amex waived its right to compel arbitration, and 2) that Amex, in refusing to pay the administrative fees assigned to it, did not waive its right to compel arbitration by its own behavior before AAA. We address these questions in the order they arise.

#### 1. Did the district court have the authority to decide whether Amex waived its right to compel arbitration, thus defaulting in proceeding with arbitration before AAA under 9 U.S.C. § 3?

We begin by assessing the district court's decision that it had the authority to determine whether Amex defaulted under 9 U.S.C. § 3, rather than directing that question to an arbitrator, when deciding Amex's motion to stay litigation and compel arbitration. We review this preserved issue de novo. See Marie v. Allied Home Mortg. Corp., 402 F.3d 1, 9 (1st Cir. 2005).

A court is only permitted to stay litigation under § 3 of the FAA if "the applicant for the stay is not in default in proceeding with such arbitration." Marie, 402 F.3d at 13 (quoting 9 U.S.C. § 3)(emphasis omitted).[5] If a court stays litigation, it

[5] Section 3 states in full:

should also compel arbitration under § 4 of the FAA. See id. And even though § 4, which covers motions to compel arbitration, does not include the word default, courts have long advised that § 3 and § 4 should be interpreted together. See id. (collecting cases). As a result, questions about default are within the court's ambit because a court must decide whether a party defaulted to determine whether it should stay litigation and compel arbitration under the FAA. See id. at 12-13, 14 n.10. And "'default' has generally been viewed by courts as including a 'waiver.'" See id. at 13 (collecting cases).

Here, the parties disagree about whether the district court exceeded its power under Marie, which instructs that courts have the power to "decide waiver issue[s]" themselves, "at least" when they involve "litigation-related activity." Id. In Marie, we found that a party's participation in earlier proceedings before

---

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

9 U.S.C. § 3 (emphasis added).

the Equal Employment Opportunity Commission ("EEOC") was litigation-related activity, so the district court, not an arbitrator, was empowered to decide whether a party's participation in those proceedings constituted a waiver of its right to compel arbitration. Id. at 13-14. This was because, in Marie, the court was well-suited to answer the question and it promoted efficiency. Id. at 14. Here, Amex contends that the district court exceeded its authority because Amex's failure to pay fees to AAA is not a "litigation-related activity" under Marie, while 5-Star claims the failure to pay fees to AAA is a litigation-related activity.

As we will explain, we view Amex's repeated failure to pay arbitration fees to AAA for the claims here -- before an arbitrator was assigned and resulting in AAA's administrative closing of the cases -- to be the sort of litigation-related activity discussed in Marie. The claims before us are the same claims that 5-Star attempted to bring before AAA, and in each one of those claims, Amex refused to pay the fees to open the arbitration despite the AAA administrator's repeated warnings that the cases would be closed without Amex's payment. Like the activity in Marie, the activity here thus "arises out of conduct within the very same litigation in which the party attempts to

[now] compel arbitration."[6] Id. at 13. And here, like in Marie, the efficiencies weigh in favor of allowing the district court to decide waiver. "[A] key purpose of the FAA" is "to permit speedy resolution of disputes," and Amex is essentially asking for a do-over of its arbitration before AAA.[7] Id. at 14. Here, it would be inefficient and likely unworkable to send this waiver issue back to AAA when no arbitrator was ever appointed to adjudicate 5-Star's claims and AAA already administratively closed the cases following Amex's nonpayment.[8] For these reasons, we think that

---

[6] While the activity constituting waiver occurred not before the district court but before AAA, we explained in Marie that this distinction does not matter. 402 F.3d at 13-14 (explaining that the fact that the at-issue activity occurred before the EEOC rather than the district court "ma[de] no difference"). Moreover, this court has already held that activity before AAA can constitute waiver. In re Tyco Intern. Ltd. Sec. Litig., 422 F.3d 41, 44-45 (1st Cir. 2005).

[7] Amex not only argues that it should get a do-over, but also that AAA's revised mass arbitration rules, which are more favorable to Amex and which became effective after AAA closed these cases, should now be applied by AAA to these cases. We need not reach these arguments. However, we note that AAA rules are not retroactive but "apply in the form in effect at the time the administrative filing requirements are met for a demand for arbitration."

[8] Amex makes two other arguments in connection with this issue, but neither has merit. First, Amex contends that the district court created a catch-22 when it applied Marie to this case because the district court cannot revisit AAA's fee decision. This argument falls flat because the district court properly understood that AAA had the power to make a fee determination and administratively close the arbitrations for nonpayment, while the district court had the power to determine whether that nonpayment constitutes a default under § 3 of the FAA. Amex also argues that the district court's extension of Marie to "encompass[] all issues concerning whether failure to pay arbitral fees constitutes waiver" created a per se rule and was error. But, this is a

the at-issue activity -- Amex's nonpayment of fees despite repeated warnings from the AAA administrator that the cases would be closed without payment -- is litigation-related activity under Marie. Because the district court "at least" has authority to determine whether a party waived its right to compel arbitration when the at-issue activity is a litigation-related activity, on the facts of this case, the district court had the authority to determine whether Amex defaulted under § 3 of the FAA.[9]

misreading of Marie, and the district court's order only applied to the specific facts here.

[9] Amex also contends that nonpayment of fees is a procedural issue and that under Howsam v. Dean Witter Reynolds, Inc., 537 U.S. 79 (2002) procedural issues should be decided by the arbitrator while substantive issues should be decided by the court. According to Amex, the dispute here implicates a circuit split on whether nonpayment of filing fees should be decided by the court or the arbitrator. See, e.g., Pre-Paid Legal Servs. v. Cahill, 786 F.3d 1287, 1298 (10th Cir. 2015) (holding that a nonpayment of fee issue should be decided by the court); Dealer Comput. Servs. Inc. v. Old Colony Motors, Inc., 588 F.3d 884, 887 (5th Cir. 2009) (holding that a nonpayment of fee issue should be decided by the arbitrator). We do not answer that question today. In Marie, we explained the import of Howsam and noted that it "did not intend to disturb the traditional rule that waiver by conduct, at least where due to litigation-related activity, is presumptively an issue for the court." 402 F.3d at 14. We follow, as we must, the holding of Marie, and find only that the failure to pay the administrative filing fee in this case -- where the claims before us are the same claims 5-Star tried to bring before AAA, where no arbitrator was assigned, where Amex chose not to pay the fees despite repeated warnings, and where AAA administratively closed the cases due to nonpayment -- falls into litigation-related activity under Marie. See 402 F.3d at 9-10, 13.

**2. Did Amex waive its right to arbitrate, and thus default?**

Having determined that the district court had authority to decide whether Amex defaulted for nonpayment, we now review its decision that Amex did in fact default. We review that legal conclusion de novo, but we review the district court's underlying factual findings for clear error. Joca-Roca Real Est., LLC v. Brennan, 772 F.3d 945, 947-48 (1st Cir. 2014), abrogated on other grounds by Morgan v. Sundance, Inc., 596 U.S. 411, 417 (2022).

Amex contends that the district court erred in defining "default" under 9 U.S.C. § 3 using the dictionary definition rather than defining default as waiver.[10] Amex argues that this was error because the dictionary definition conflicts with the FAA's statutory scheme "to make arbitration agreements as enforceable as other contracts." 5-Star, by contrast, argues that the definition is consistent with the FAA's statutory scheme, and that Amex is instead interested in making arbitration agreements more enforceable than other contracts.

In reviewing the district court's decision that Amex defaulted, we need not consider the district court's adoption of the dictionary definition of default because the district court correctly evaluated default under Supreme Court precedent. As

[10] When defining "default," the district court consulted Black's Law Dictionary's definition, which states that default is "the omission or failure to perform a legal or contractual duty; esp., the failure to pay a debt when due."

discussed, default includes waiver. Marie, 402 F.3d at 13. Moreover, waiver is "the intentional relinquishment or abandonment of a known right."[11] Morgan, 596 U.S. at 417 (quoting United States v. Olano, 507 U.S. 725, 733 (1993)). The district court properly considered this standard. It explained that Amex made the "deliberate choice not to pay arbitration fees" even after being warned by AAA repeatedly that the cases would be administratively closed absent payment. The district court held that this constitutes waiver, and we agree. Waiver by conduct may be present where a party's conduct is inconsistent with a future desire to arbitrate its claims.[12] Marie, 402 F.3d at 11-12. We find waiver by conduct here. The record makes clear that AAA warned Amex multiple times, over the course of months, that its cases would be administratively closed without payment. At the same time Amex does not argue, nor could it, that it did not understand that the cases would be administratively closed. Amex's refusal to pay the filing fees set by the arbitrator resulted in the foreseeable (and

[11] While Marie is instructive about the power of the district court to decide whether Amex defaulted under 9 U.S.C. § 3, the waiver test recited by this court in Marie was later impacted by Morgan. See Marie, 402 F.3d at 15; Joca-Roca Real Est., LLC, 772 F.3d at 948, abrogated by Morgan, 596 U.S. at 417-19. For that reason, we apply the test for waiver as discussed by the Supreme Court in Morgan. 596 U.S. at 417-19.

[12] "Like any other contract right, the right to arbitrate may be waived either explicitly or through an implicit course of conduct." Toddle Inn Franchising, LLC v. KPJ Assocs., LLC, 8 F.4th 56, 64 (1st Cir. 2021).

forewarned) outcome of closure of those arbitrations. Under these circumstances, we conclude that Amex's conduct was inconsistent with an intent to arbitrate. Therefore, Amex waived their right to compel arbitration and thereby defaulted in proceeding with the arbitration.[13]

**B.**

We now turn to the unclean hands doctrine, reviewing for abuse of discretion the district court's decision that 5-Star did not have unclean hands. See Vaquería Tres Monjitas, Inc. v. Irizarry, 587 F.3d 464, 480 (1st Cir. 2009). The district court's decision on this issue was two-fold. First, it held that Amex could not raise an unclean hands defense because under the FAA, the district court first needed to ensure that Amex was not in "default." Second, the district court found that regardless, 5-Star did not have unclean hands. Amex contests both parts of this decision, while 5-Star agrees with the district court in full.

We need not decide whether the unclean hands doctrine applies in this case because in any event, we affirm the district court's finding that 5-Star did not have unclean hands. When deciding whether a party has unclean hands, the court considers whether the party seeking relief engaged in misconduct that is

[13] Because we hold that Amex defaulted under 9 U.S.C. § 3, the district court did not err when it denied Amex's motion to stay litigation and compel arbitration, and we need not reach Amex's additional arguments regarding waiver.

directly related to the merits of the controversy. See Vaquería Tres Monijitas, Inc., 587 F.3d at 480; Precision Instrument Mfg. Co. v. Auto. Maint. Mach. Co., 324 U.S. 806, 814–15 (1945). The record does not suggest that 5-Star engaged in misconduct directly related to the merits of the controversy. 5-Star participated in dialogue with Amex and the AAA administrator about the fees owed, and it paid the fees that the AAA administrator decided were owed.[14] For this reason, we find that the district court did not abuse its discretion when it found that 5-Star did not act with unclean hands.

## III. Conclusion

For the foregoing reasons, we **affirm** the district court's order denying Amex's motion to stay litigation and compel arbitration.

[14] While Amex insists that 5-Star failed to pay filing fees on four separate occasions, it does not suggest that 5-Star refused to pay the invoiced fees at issue here by the deadline AAA set.